UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
ALLEN VALERIO                                               :
                                                            :
                        Petitioner,                         :
                                                            :   07 Civ. 9867 (GEL)
        -v.-                                                :
                                                            :   **OPINION AND ORDER**
DIVISION OF PAROLE,                                         :
Bronx, New York (BXI)                                       :
                                                            :
                        Respondent.                         :
                                                            :
------------------------------------------------------------x

Allen Valerio, pro se.

Andrew M. Cuomo (Lisa Fleischmann, Jennifer L. Johnson, of Counsel), Attorney General of the State of New York, for Respondent.

GERARD E. LYNCH, District Judge:

      Allen Valerio, a New York State parolee, brings this habeas corpus petition challenging his conviction and sentencing for criminal possession of a weapon. The petition will be denied.

## BACKGROUND

      The largely uncontested evidence at Valerio's short trial revealed the following facts. On October 20, 2002, two police officers patrolling in upper Manhattan came upon a crowd of over fifty people surrounding a car, shouting that a man in the car "ha[d] a gun" and had "beat[en] up an old lady." Officer Maria Rojas called for back-up and two more officers joined her. Officer Rojas then directed the persons in the car – Joann Cavallo, Ms. Cavallo's two teen-aged daughters, and Valerio – to show their hands. The women complied immediately, but Valerio initially did not. Eventually, Rojas and Officer Junio Acosta succeeded in extracting Valerio

from the car, handcuffing him, and frisking him. Officer Acosta, who conducted the pat-down, felt a small handgun in Valerio's pocket and extracted it. A box cutter with some masking tape attached to it was found in another pocket.

As the crowd continued to be agitated and hostile to Valerio, and as Valerio appeared "very bruised up" (apparently from prior rough handling by the crowd), the officers called for an ambulance and dispatched Valerio to the hospital. (He was later found to have a skull fracture.) Although the officers were told by members of the crowd that the "old lady" had come from a particular building, was "taped up" with masking tape, and had been helped to a taxi to go to a hospital, a police investigation was unable to locate such a person. No one in the crowd was willing to identify himself, and no one in the crowd testified at the trial.

About six hours later, a detective questioned Valerio. Valerio interrupted the reading of Miranda warnings, said that he wanted to speak to the detective, and stated that "the Dominicans" had put the gun into his pocket during the altercation, before the police arrived. Testing of the weapon disclosed that it was operable, fully loaded with six bullets in the magazine and one in the chamber, and was "ready to fire," with the safety off.

The jury found Valerio guilty of Criminal Possession of a Weapon in the Third Degree, but acquitted him of the Second Degree offense – the aggravating element of which is intent to use the gun to commit a crime. He was sentenced, as a second felony offender, to five years in prison and five years of post-release supervision. The Appellate Division affirmed his conviction, and leave to appeal was denied. People v. Valerio, 806 N.Y.S.2d 189 (1st Dep't 2005), leave to appeal denied, 6 N.Y.3d 819 (2006). A motion to vacate the conviction was denied in the state courts. (Decl. in Opp'n Ex. I). This petition for habeas corpus followed.

**DISCUSSION**

Valerio raises four claims of constitutional error, all of which he presented to the state courts either on direct appeal or in the motion to vacate the conviction: first, that his rights under the Confrontation Clause were violated by the admission of hearsay statements from anonymous members of the crowd that he had had a gun and had assaulted a woman; second, that his privilege against self-incrimination was violated by the introduction of testimony, and by prosecutorial argument, that he did not advise the police of his claim that the gun had been planted on him until six hours after his arrest; third, that he was denied due process by the trial court's alleged reliance at sentencing on uncharged and unproven criminal conduct against the "old lady"; and fourth, that the prosecutor denied him a fair trial by failing to disclose before trial allegedly exculpatory statements by Joann Cavallo and her daughters. None of these claims warrants relief.

**I.      Confrontation Clause**

The Confrontation Clause of the Sixth Amendment prohibits the introduction at trial of "testimonial" hearsay, absent a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 50-52 (2004). It is axiomatic, however, that the Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n.9. See also Tennessee v. Street, 471 U.S. 409, 414 (1985); United States v. Paulino, 445 F.3d 211, 216-17 (2d Cir. 2006); United States v. Stewart, 433 F.3d 273, 291 (2d Cir. 2006). This corollary rule is self-evident once the basic nature of the confrontation right is understood. The Constitution guarantees a defendant the right to confront "the witnesses against him." If testimony by a police officer that "I interviewed Smith, who said he saw the defendant

commit the murder" is offered as evidence that the defendant did in fact commit the murder, Smith is being presented as a witness, without the defendant having the opportunity to confront him. But if the same testimony is offered where the defendant stands accused of murdering *Smith*, to prove that defendant had a motive to kill a potential witness against him, it is the officer, not Smith, whose credibility is in issue and who stands as a witness against the defendant.

In this case, as the Appellate Division recognized, the evidence of the crowd's statements was expressly received not for the truth of the matter asserted, but to explain the officers' actions in confronting and searching Valerio, and to refute the argument that the police failed to investigate the facts of the case. 806 N.Y.S.2d at 190-91. The trial court expressly admitted the evidence on this theory (Trial Tr. 1: 23-24)[1], and the jury was repeatedly instructed that the evidence was *not* to be considered for the truth of the statements, and was not to be considered to show that Valerio had a gun or had tried to rob an old woman, or that a woman bound with masking tape had been seen near the scene of the incident (Trial Tr. 2: 38-39, 139, 207-09). There was thus no violation of defendant's confrontation rights.

As a matter of state evidentiary law, the trial judge in this case was faced with the difficult task of balancing the probative value of the evidence against the potential prejudice to the defendant that the jury would be unable to follow the instruction, or would be overwhelmed by the proportion of "crowd noise" evidence to direct admissible evidence that Valerio intentionally possessed the loaded firearm. There was genuine probative value to the non-

---

[1] There are two sets of trial transcripts. Trial Transcript 1 records the proceedings on the morning of October 29, 2002. Trial Transcript 2 records the proceedings on the afternoon of October 29, 2002, and on October 31, 2002.

hearsay use of the evidence.  Absent some understanding of the situation facing the officers at the time of Valerio's arrest, their actions would surely have appeared arbitrary or even abusive, and the jury would surely have wondered what was being kept from them.  The finding that some evidence of what the officers were told by the crowd was probative for non-hearsay reasons was thus clearly correct.  Reasonable judges could disagree about how much such evidence was required, or how the balance should be struck.[2]  The balancing process, however, is a matter of state law, and one moreover on which the discretion of the trial judge must be afforded considerable deference by the Monday-morning quarterbacks on appellate and federal habeas courts.

Here, the evidence was admitted for legitimate, non-hearsay purposes.  The purposes for which the evidence was admitted and, as importantly, the purposes for which the evidence was not to be considered, were carefully explained to the jury, in instructions it is presumed that the jurors followed.  Indeed, there is some confirmation for that assumption in the record: while the jury convicted Valerio of the knowing possession of the gun – a charge for which the officers' recovery of the gun from his pocket provided ample evidence – it acquitted him of possession of a weapon with a criminal intent, a charge that might well have been bolstered had the jury made impermissible use of the crowd's assertion that Valerio had assaulted and/or robbed an old

---

[2] In at least one particular, the able trial judge in this case recognized an imperfection in the balance, noting that because the specific issue of statements about masking tape and the recovery of the box cutter with tape remnants had not been raised pre-trial, "more hearsay was elicited than I anticipated" (Trial Tr. 2: 37), and an unanticipated issue had been injected into the trial.  Such, however, are the vagaries of trial management.  The box cutter had been disclosed in discovery, and defense counsel had the opportunity to examine it.  The trial court incorporated these matters as well into its cautionary instructions.  The issue thus adds little to Valerio's overall Confrontation Clause claim, and the admission of the box cutter and related evidence did not deprive Valerio of a fair trial.

woman. Since no hearsay statements were offered for or used for the truth of their contents, Valerio's confrontation rights were not infringed.

**II.     Self-Incrimination**

The right against self-incrimination provided by the Fifth Amendment gives a defendant an absolute right to remain silent and to put the prosecution to its proof. Accordingly, prosecutors are forbidden from using a defendant's silence to support an inference of guilt or suggesting to the jury that a defendant's silence should be held against him in any way. To preserve that right, the law requires police to advise an arrested person of his right to silence before being subjected to custodial interrogation, Miranda v. Arizona, 396 U.S. 868 (1969), and having been, in effect, cautioned not to speak, a defendant's later self-exculpatory testimony or argument may not be impeached by his prior failure to provide the defense in response to post-warning police interrogation, Doyle v. Ohio, 426 U.S. 610 (1976).

Valerio attempts to avail himself of these principles to argue that his rights were violated by the prosecutor in eliciting testimony, and arguing to the jury, that his claim that the weapon was planted on him by members of the crowd that assaulted him was not presented at the time of his arrest, but was withheld until some six hours later, when he was questioned by detectives. The argument is without merit.

Here, the prosecutor did not comment on Valerio's failure to testify at trial, or on any failure to speak in response to Miranda warnings. (Indeed, Valerio was not silent in response to interrogation, and the prosecutor's comment was made to rebut the exculpatory statement that Valerio made to his interrogators.)  See Fletcher v. Wein, 455 U.S. 603, 606 (1982) (use of silence not induced "by implicitly assuring the defendant that his silence [will] not be used

6

against him not unconstitutional"). Moreover, the prosecutor's argument was made specifically to rebut the defense contention, advanced from the outset of the trial in defense counsel's opening statement, that reasonable doubt existed because Valerio had advanced his claim of frame-up "at the first opportunity" (Trial Tr. 1: 66-67), and the police had failed to investigate the claim (Trial Tr. 2: 66-70).

As the Supreme Court has recognized, "the protective shield of the Fifth Amendment should [not] be converted into a sword that cuts back on the area of legitimate comment." United States v. Robinson, 485 U.S. 25, 32 (1988), quoting United States v. Hasting, 461 U.S. 499, 515 (1983) (Stevens, J., concurring). Thus, "defense argument may, in a proper case, 'open the door' to an otherwise indefensible prosecution rebuttal." United States v. Rivera, 971 F.2d 876, 883 (2d Cir. 1992). This door-opening principle extends even to the core area of a comment or a defendant's silence at trial. See Robinson, 485 U.S. at 32 (reference to defendant's ability to testify a "fair response" to defendant's claim that the government had denied him an opportunity to explain himself).

The prosecution's evidence that Valerio was guilty of possessing a loaded weapon was simple, compelling, and essentially undisputed: Officer Acosta found a loaded gun in his pocket. The defense attempted to cast doubt on the conclusion of guilt by raising the possibility that the gun had been planted. Valerio did not testify to any such event. But the jury was made aware of his out-of-court unsworn statement to this effect, and the argument was repeatedly made that the absence of evidence refuting this hypothesis was the result of the authorities' culpable failure to investigate it. (Trial Tr. 1: 61-68; Trial Tr. 2: 163-64, 168-69, 171, 177.)

In response, the prosecution briefly pointed out that the frame-up theory had not been presented to the police at a time when the police could have engaged in further investigation, but was presented for the first time some six hours later, after the crowd had long dispersed and there was no possibility of meaningful follow-up.[3] The trial judge was then entirely correct to find that the prosecutor "did not dwell on" Valerio's silence, and that the prosecutor's remarks were "fair comment" in the context of the trial issues. (Trial Tr. 2: 224.) At a minimum, the state courts' rejection of his argument was neither contrary to, nor an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

## III.    Sentencing

Valerio next claims that his right to due process at sentencing was denied, because the trial judge referred to the allegation of robbery in imposing sentence. The record does not support the claim that Valerio's sentence was enhanced because of the allegation. The subject was only mentioned by the court in response to Valerio's argument that he should be sentenced leniently, because he did not attempt to use the gun when set upon by the crowd. The court rejected this argument for a variety of reasons, including that Valerio's possession of the weapon

---

[3] In a letter following the submission and briefing of this petition, Valerio argues that the testimony to this effect from officers Rojas and Acosta is contradicted by the officers' later testimony given by deposition in a related civil matter, <u>Valerio v. City of New York</u>, No. 03 Civ. 3027 (S.D.N.Y.). (<u>See</u> Letter from Allen Valerio, dated May 18, 2008.) In particular, the officers appear to have testified during these depositions that Valerio had first claimed that the gun was not his at the scene shortly after the officers had recovered it, and *not* six hours later. The transcripts that Valerio attaches to his letter are undated and unsigned, but even assuming their genuineness, they are irrelevant to the Fifth Amendment claim made in his habeas petition, because the merits of that claim do not depend on the truthfulness or accuracy of the officers' testimony at trial, but on the fact that the government elicited it. To the extent that petitioner is arguing that the officers' later testimony is exculpatory and grounds for a new trial on his guilt, this is a new claim that has not been exhausted in state court proceedings, and it is not ripe for federal habeas review.

was "unacceptable" regardless of whether he tried to use it; that it was not clear that failure to use the gun was a product of self-restraint rather than fear or lack of opportunity, and that it was "incredible to think" that the crowd had set upon Valerio for no reason rather than because of "some inappropriate activity" on the part of Valerio.  (Sentencing Tr. 26-27).  This reference to the possibility that Valerio had engaged in an uncharged unlawful activity, as one of several reasons to reject his plea for leniency, falls well short of a decision to increase his sentence based on a finding of an uncharged crime.

Even assuming arguendo that the court imposed a higher sentence than it otherwise would have done because it believed Valerio had committed such a crime, the sentence was constitutionally imposed.  The five-year sentence was less than the statutory maximum of seven years.  N.Y. Penal Law 70.02(10)(c), 70.06(6), 265.02(4).  Since the sentence was within the range authorized by law for the crime found by the jury beyond a reasonable doubt, the judge was permitted to determine the facts relevant to sentence by a preponderance of the evidence (unlike the jury at trial), and to consider hearsay evidence in making such findings.  McMillan v. Pennsylvania, 477 U.S. 79 (1986); Williams v. New York, 377 U.S. 241 (1949).  "Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate" a defendant's constitutional rights.  Harris v. United States, 536 U.S. 545, 558 (2002).  Cf. Blakely v. Washington, 542 U.S. 296 (2004) (jury trial right applies to factfinding that permits a higher sentence than would be legally authorized based on facts found by jury or admitted at guilty plea); Apprendi v. New Jersey, 530 U.S. 466 (2000) (same).

**IV.     Brady**

Finally, there was no violation of the prosecutor's Brady obligations.  The prosecution has an obligation to disclose any material exculpatory information, Brady v. Maryland, 373 U.S. 83 (1963), and to do so in sufficient time that the defense can make use of the information at trial, Leka v. Portuondo, 257 F.3d 89, 103 (2d Cir. 2001).  Failure to do so denies the defendant a fair trial "if there is a reasonable probability that the suppressed evidence would have produced a different verdict."  Studder v. Greenway, 527 U.S. 263, 281 (1999).

Here, as the state court found, the written statements of Joann Cavallo and her daughters were not exculpatory.  (Decl. in Opp'n Ex. I at 3.)  Those statements fully corroborated the officers' testimony.  The women stated that the people in the crowd that were beating Valerio were saying that he had robbed an old woman, and told the police that he was armed, as well as that Valerio failed to comply with the officers' directions, and that the officers found a gun and box cutter on his person.  Thus, the statements, "as opposed to being exculpatory or favorable [to Valerio], . . . [were] inculpatory and favorable to the People's case as they substantiate the testimony of Officer Rojas and even establish [his] possession of a gun, the crime for which [he] was charged."  (Id.)  In any event, it can hardly be argued that the prosecution suppressed any evidence, since Valerio was clearly aware of the role played by these women and their potential value as witnesses, and thus could have interviewed them and called them to testify if they had information of value.  United States v. Grossman, 843 F.2d 78, 85 (2d Cir. 1988); see also United States v. Agurs, 427 U.S. 97, 103 (1976).

Accordingly, Valerio's Brady claim is without merit.

## CONCLUSION

For the foregoing reasons, none of Valerio's claims of constitutional error have merit. His petition is therefore denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

SO ORDERED.

Dated: New York, New York
       June 16, 2008

_____
GERARD E. LYNCH
United States District Judge